1

2

3

4

5

6

7

**IN THE UNITED STATES DISTRICT COURT FOR THE**

8

**EASTERN DISTRICT OF CALIFORNIA**

9

10

FAIR HOUSING COUNCIL OF                    1:12-cv-00794-AWI-GSA
CENTRAL CALIFORNIA, INC., et al.,

11                                                                    PRETRIAL ORDER

Plaintiffs,

12                                                                    Motions in Limine Hearing and Trial
                                                                     Confirmation:

v.

13                                                                            October 1, 2013

TYLAR PROPERTY MANAGEMENT                              10:00 a.m., Courtroom 2

14   COMPANY et al.,

                                                                     Trial:        October 8, 2013

15                          Defendants.                                     8:30 a.m., Courtroom 2

16   _____/     RULES OF CONDUCT

17

18   The pretrial conference was held on Tuesday, August 27, 2013.  The trial in this matter is set for

19   Tuesday, October 8, 2013.  The parties currently estimate the trial shall take five (5) to fifteen

20   (15) days.

21

22                                    **I. Jurisdiction and Venue**

23   There are no disputes regarding jurisdiction or venue in this action.

24

25

26                                                    1

**II. Jury Trial**

This action shall be tried by the Court without a jury.

**III. Facts**

**Undisputed Facts**

The parties agree that many of the underlying facts are undisputed.  However, specific details in the presentation of undisputed facts require further confirmation based on records. Accordingly, the parties will file a joint statement of undisputed facts seven days before the trial.

**Disputed Facts**

**A. Plaintiffs' Statement of Disputed Factual Issues**

1.  Whether any defendant – Melvin Wapner, Tylar Property Management, Inc., or David Evans – acting individually or through agents, injured any plaintiff by committing any of the following unlawful housing practices:

    a.  making unavailable dwellings for rent because of sex;

    b.  using different rental standards or procedures because of sex;

    c.  evicting or threatening eviction of a female renter because of sex;

    d.  imposing different terms, conditions, or privileges on rental of a dwelling by a female renter or prospective female renter, or denying or limiting services and facilities in connection with a dwelling rented by a woman because of sex;

    e.  engaging in unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature toward a female renter or prospective female renter such that submission to the conduct, either explicitly or implicitly, was made a term or condition relating to the rental of a dwelling;

f.  engaging in unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature toward a female renter or prospective female renter such that submission to the conduct, either explicitly or implicitly, was made a term or condition relating to the provision of benefits or services in connection with rental of a dwelling;

g.  denying, delaying or limiting services or facilities in connection with rental of a dwelling because a female renter or prospective female renter failed or refused to provide sexual favors;

h.  engaging in unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature towards a female renter or prospective female renters such that the conduct had the effect of creating an environment which a reasonable woman in the same position would consider intimidating, hostile, offensive, or otherwise making the tenancy significantly less desirable, in connection with the rental of a dwelling;

i.  engaging in unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature towards a female renter or prospective female renters such that the conduct had the effect of creating an environment which a reasonable woman in the same position would consider intimidating, hostile, offensive, or otherwise making the tenancy significantly less desirable, in connection with the provision of benefits or services in connection therewith;

j.  steering or limiting a female renter or prospective female renter to a particular section of a community, neighborhood or part of a building because of sex;

3

k.  discharging or taking other adverse action against an employee or agent because he or she refused or objected to participating in an unlawful housing practice;

l.  making statements indicating a limitation, preference or discrimination, or the intent to discriminate, based on sex;

m.  expressing to an agent, employee, female renter or prospective female renter a preference for or limitation because of sex;

n.  indicating through words or conduct that a dwelling – which is available for inspection or rental – is unavailable because of sex;

o.  limiting information to a prospective female renter by word or conduct regarding suitably priced dwellings available for inspection or rent because of sex;

p.  threatening, intimidating, harassing or interfering with a female renter or prospective female renter or their property in their use or enjoyment of dwellings because of sex;

q.  interfering with a female renter or prospective female renter in the exercise of her fair housing rights;

r.  retaliating against a female renter or prospective female renter because she exercised her fair housing rights;

s.  aiding and abetting the commission of an unlawful housing practice by other persons, including an agent or employee; or,

t.  engaging in a pattern or practice of sexual harassment against female renters or prospective female renters.

4

2. Whether defendants, individually or acting through employees or agents, breached the covenant of quiet use and enjoyment – by negligence, wrongful entry or invasion of privacy – with respect to Tawana Pickett or Rene McCants.

3. Whether defendants, individually or acting through employees or agents, invaded the right of privacy of Tawana Pickett, Sheryl Linthicum Smith or Rene McCants.

4. The amount of compensatory damages, if any, each defendant should be ordered to pay to each plaintiff.

5. The amount of statutory damages or civil penalties, if any, each defendant should be ordered to pay to each plaintiff.

6. The amount of punitive damages, if any, each defendant should be ordered to pay to each plaintiff.

7. The nature, terms, duration and scope of equitable relief, if any, to be awarded in this action.

8. Whether the putative settlement agreement executed by plaintiff Tawana Pickett and defendant Melvin Wapner is enforceable.

9. Whether the putative settlement agreement executed by plaintiff Tawana Pickett and defendant Tylar Property Management Co., Inc. is enforceable.

10. Whether the putative settlement agreement executed by plaintiff Rene McCants and defendant Melvin Wapner is enforceable.

11. Whether the putative settlement agreement executed by plaintiff Rene McCants and defendant Tylar Property Management Co., Inc. is enforceable.

12. Whether the putative settlement agreement executed by plaintiff Rene McCants and defendant David Evans is enforceable.

**B. Defendants' Statement of Disputed Factual Issues**

1. Whether Mel Wapner made inappropriate comments to Tawana Pickett.

2. Whether Mel Wapner asked Tawana Pickett to wear a dress without underwear and for her to touch herself.

3. Whether Mel Wapner kissed Tawana Pickett on her cheek and grabbed her buttocks.

4. Whether Mel Wapner pulled Tawana Pickett into a corner of rental dwelling, and exposed himself, asking Ms. Pickett to give him oral sex.

5. Whether Mel Wapner asked Tawana Pickett to watch him masturbate.

6. Whether Mel Wapner grabbed Tawana Pickett and gave her a couple of hugs, and felt her breasts.

7. Whether Tawana Pickett wrote letters to Rolando Jefferson when he was incarcerated complaining about Mel Wapner.

8. Whether Tawana Pickett complained to her mother about Mel Wapner.

9. Whether Tawana Pickett's mother told her to file a complaint against Mel Wapner in 2005.

10. Whether Tawana Pickett provided the address for Tylar Property to ten people so that they could pick up an application for housing.

11. Whether Alisa Packard, Tawana Pickett and David Evans had consensual sexual relationships with each other (threesomes).

12. Whether Tawana Pickett is a prostitute.

13. Whether Tawana Pickett had consensual sexual relations with David Evans during her tenancy at Tylar Property.

14. Whether David Evans ever demanded or received sexual relations or acts from any tenant in exchange for favors or discounts regarding renting from Tylar Property.

15. Whether David Evans ever stated to Tawana Pickett that he would pay her money if she would drop the lawsuit against him.

16. The amount of times Tawana Pickett contacted David Evans after she filed a lawsuit against him.

17. Whether David Evans had sex with Tawana Pickett in exchange for her not paying rent.

18. Whether David Evans had sex with Tawana Pickett in exchange for not paying the entire amount on a deposit.

19. Whether David Evans gave Tawana Pickett money for rent in exchange for sex.

20. Whether Tawana Pickett had oral sex/hand jobs with David Evans that occurred due to rent problems or the current litigation.

21. Whether Debbie Woods, Tawana Pickett and David Evans engaged in consensual "threesomes" together.

22. Whether Tawana Pickett was sober when she gave a videotaped confession to David Evans on or about January 14th 2013.

23. Whether Tawana Pickett lied when she gave a videotaped confession to David Evans on or about January 14, 2013.

24. Whether it is Tawana Picket's voice on a phone recording on Exhibit 10 to her deposition.

25. Whether Tawana Pickett left messages on David Evans' phone (text or voice) requesting that he have sex with her.

26. Whether Tawana Pickett would call David Evans when she needed money.

27. The number of tenants, and names thereof, that David Evans had sexual relations with, and the location where these relations took place.

28. The places Tawana Picket rented from after she was evicted from Tylar Property rentals.

29. Whether Tawana Pickett called and asked David Evans how much money he would give her to not show up at her deposition.

30. Whether Tawana Pickett voluntarily and knowingly entered into a settlement agreement with Defendants in June 2012, and received $15,000.00, in exchange for releasing Defendants from the lawsuit that she filed in this current litigation.

31. Whether Rene McCants voluntarily and knowingly entered into a settlement agreement with Defendants in June 2012, and received $5,000.00, in exchange for releasing Defendants from the lawsuit that she filed in this current litigation.

32. Whether David Evans ever offered anyone reduced rent or the waiver of late fees in exchange for sex.

33. Whether David Evans solicited or engaged in vaginal intercourse with Rene McCants in exchange for her rental deposit at 411 N. Glenn Avenue, Apt. 204, Fresno, California.

34. Whether David Evans requested or engaged in oral sex with Rene McCants while she resided at 204 East Olive Avenue, Fresno, California.

35. Whether Rene McCants complained to Johnny Belt about David Evans.

36. Whether Rene McCants complained to Donald Lewis about David Evans.

37. Whether Rene McCants was "homeless" in 2004 or 2010.

38. Whether Rene McCants is a prostitute.

39. Whether David Evans ever offered or agreed to waive Sheryl Linthicum Smith's late fee in connection with Linthicum Smith's June, 2012 rent.

40. Whether David Evans ever solicited sex from Sheryl Linthicum Smith.

41. Whether David Evans ever told Sheryl Linthicum Smith that he would waive her late fee(s) if she had sex with him.

42. Whether Sheryl Linthicum Smith complained about David Evans to Veronica Talavera Ramos or Mel Wapner.

43. Whether Mel Wapner requested Sheryl Linthicum Smith come in to the Tylar office on a Saturday.

44. Whether late or other fees were included in any notice to pay or quit.

45. Whether Sheryl Linthicum Smith complained about David Evans to Sherry Smith or Michael Grimes.

46. Whether Mel Wapner or David Evans sexually harassed any Tylar employee.

**C. Disputed Evidentiary Issues**

The parties anticipate disputed evidentiary issues centered on the proper scope of certain exhibits and testimony and propose to present their dispute to the Court before trial as follows:

1.  Fourteen days before trial, defendants will file their Fed. R. Evid. 412 disclosure; seven days before trial, plaintiffs will file a response;

2.  Fourteen days before trial, plaintiffs will file their Fed. R. Evid. 415(b) disclosure; seven days before trial, defendants will file a response;

3.  Fourteen days before trial, defendants will move to exclude evidence of alleged workplace sexual harassment by defendants; seven days before trial, plaintiffs will file a response;

4.  In the event that a deponent is unavailable to appear at trial, the parties will file a joint statement, designating transcript excerpts and objections thereto. If there is a dispute

9

regarding a deponent's availability, that dispute will be presented as part of the joint statement; and,

5.   Plaintiffs ask that each side be required to disclose witnesses who may be called for purposes of impeachment or rebuttal on their witness list; defendants disagree.

**D. Specific Factual Information**

N/A.

# IV. Relief Sought

**Plaintiffs seek the following relief:**

1.   Compensatory damages pursuant to the federal Fair Housing Act, 42 U.S.C. § 3613, the California Fair Employment and Housing Act ("FEHA"), Govt. Code § 12989.2 , and the California Unruh Civil Rights Act, Civil Code § 52;

2.   Statutory damages under the Unruh Civil Rights Act and companion provisions, in no case less than $4,000 for each and every violation pursuant to Cal. Civ. Code § 52(a) , and a civil penalty of $25,000 pursuant to Cal. Civ. Code § 52(b);

3.   Punitive damages pursuant to the federal Fair Housing Act, 42

4.   U.S.C. § 3613, only; and,

5.   Declaratory and injunctive relief pursuant to the federal Fair Housing Act, 42 U.S.C. § 3613, and the California FEHA, Govt. Code § 12989.2.

**Defendants seek the following relief:**

1.   Judgment entered against plaintiffs, and in favor of defendants, and the dismissal of the case with prejudice.

## V. Points of Law

### A. Plaintiffs' contentions

1. Each defendant, individually or acting through employees or agents, denied, limited, or otherwise made unavailable dwellings because of sex, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), 24 C.F.R. §§ 100.60 & 100.70; FEHA, Cal. Govt. Code §§ 12927(c), 12955(a), (d) & (k); and the Unruh Act, Cal. Civ. Code §§ 51-52.

2. Each defendant, individually or acting through employees or agents, discriminated in the terns, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b), 24 C.F.R. §§ 100.65, FEHA, Cal. Govt. Code §§ 12927(c), 12955(a), (d) & (k), 12955.6; and the Unruh Act, Cal. Civ. Code §§ 51-52.

3. Each defendant, individually or acting through employees or agents, made statements with respect to rental of a dwelling that indicated a preference, limitation, or discrimination, or an intent to make any preference, limitation, or discrimination, based on sex, in violation of the Fair Housing Act, 42 U.S.C. § 3604(c), 24 C.F.R. § 100.75, FEHA, Cal. Govt. Code §§ 12927(c), 12955(b), (c) & (d), 12955.6; and the Unruh Act, Cal. Civ. Code §§ 51-52.

4. Each defendant, individually or acting through employees or agents, limited, by words or conduct, information about the availability of dwellings for rent because of sex, in violation of the Fair Housing Act, 42 U.S.C. § 3604(d), 24 C.F.R. § 100.80, FEHA, Cal. Govt. Code §§ 12927(c), 12955(a), (d) & (k), 12955.6; and the Unruh Act, Cal. Civ. Code §§ 51-52.

5.  Each defendant, individually or acting through employees or agents, threatened, coerced, intimidated, harassed or interfered with a person or her property in the exercise or enjoyment of, or on account of having exercised or enjoyed, her fair housing rights, or because of sex, or aided, abetted or incited any other person to violate federal or state fair housing laws in violation of the Fair Housing Act, 42 U.S.C. § 3617, 24 C.F.R. § 100.400, FEHA, Cal. Govt. Code §§ 12927(c), 12955(d) & (g), 12955.6, 12955.7; and the Unruh Act, Cal. Civ. Code §§ 51-52.

6.  Defendants, individually or acting through employees or agents, injured plaintiffs Pickett and McCants in violation of the Ralph Act, California Civil Code § 51.7, by intimidation, including threat of harm to their persons or property, because of sex. (The Ralph Act claim turns on what constitutes intimidation by threat of violence against persons or their property because of sex; plaintiffs will submit briefing on that issue before trial.)

7.  Each plaintiff is entitled to compensatory damages pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c); FEHA, Cal. Govt. Code § 12898.2; and the Unruh Act, Cal. Civ. Code §§ 52.

8.  Each plaintiff is entitled to statutory damages and civil penalties pursuant to FEHA, Cal. Govt. Code §§ 12948, 12955(d), 12898.2; and the Unruh Act, Cal. Civ. Code §§ 52.

9.  Each plaintiff is entitled to punitive damages pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c); and,

10. Each plaintiff is entitled to declaratory and injunctive relief pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c); and FEHA, Cal. Govt. Code § 12898.2.

**B. Defendants' contentions**

1. Plaintiffs Pickett and McCants are barred and estopped from pursuing claims against defendants by virtue of the settlement agreements.

    a. In or about early June 2012, Pickett and McCants, individually and voluntarily, entered into separate settlement discussions and agreements with defendants. Written agreements were prepared and executed by Pickett and McCants, and in exchange for the dismissal of the complaint in this action, defendants agreed to pay settlement monies to each plaintiff, as follows: defendants agreed to pay, and did pay, McCants the total gross amount of five thousand dollars ($5,000.00), and defendants agreed to pay, and did pay, Pickett the total gross amount of fifteen thousand dollars ($15,000.00).

    b. Pickett and McCants agreed, by way of these agreements, to release and forever discharge defendants from all liabilities, causes of actions, charges, complaints, suits, claims, obligations, costs, losses, damages, rights, judgments, attorneys' fees, expenses, bonds, bills, penalties, fines, and all other legal responsibilities of any form whatsoever whether known or unknown, whether suspected or unsuspected, whether fixed or contingent, including but not limited to those arising from any acts or omissions occurring prior to the effective date of the settlement agreements.

    c. Because of "the high judicial favor accorded the voluntary settlement of disputes," a "trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." In re City Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1994) [internal quotations omitted]. "To be enforced, a settlement agreement must meet two

13

requirements. First, it must be a 'complete agreement.' Maynard v. City of San Jose, 37 F.3d 1396, 1401 (9th Cir. 1994).) Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. (See Harrop v. Western Airlines, Inc., 550 F.2d 1143, 1144-45 (9th Cir. 1977)." Bryant v. AMTRAK, 2011 U.S. Dist. LEXIS 7580, 6-8 (D. Cal. 2011).

d. "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992) [quotation omitted]. "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective'-that is, the intent manifested in the agreement and by surrounding conduct-rather than the subjective beliefs of the parties. For this reason, the true intent of a party is irrelevant if it is unexpressed." Id. [citations omitted].

e. Further, Rule 2-100 is not intended to prevent the parties themselves from communicating with respect to the subject matter of the representation, and nothing in the rule prevents a member from advising the client that such communication can be made. Id. cmt. (1992). "The parties…have the right to communicate with each other without their counsel present…When the content of such communication originates with and is directed by the client and not the attorney it is permitted communication under the rules."]) The State Bar of California Standing Comm. on Prof'l Responsibility and Conduct, Formal Op. No. 1993-131; ING Bank, fsb v. Fazah, 2009 U.S. Dist. LEXIS 106682 (E.D. Cal.

Nov. 13, 2009). Therefore, Pickett and McCants are barred and estopped from continuing to pursue any claims against Defendants in this action.

2. Any claims By Pickett or McCants which predate May 14, 2010 are barred by the statute of limitations.

    a. The FHA, 42 U.S.C.S. § 3604, requires that a suit be filed within two years after the occurrence or termination of an alleged discriminatory housing practice. 42 U.S.C.S. § 3613(a)(1)(A). FEHA is intended to conform to the general requirements of the FHA, and also employs a two (2) year statute of limitations. Cal. Gov't. Code § 12989.1.

    b. While, in a suit claiming that the defendant engaged in a continuous course of conduct that causes damages, a plaintiff can recover for damages that preceded the limitations period if they stem from a persistent process of illegal discrimination, no such process is present in connection with McCants' claims. Stewart v. CPC International, Inc., 679 F.2d 117, 121 (7th Cir. 1982); McKenzie v. Sawyer, 221 U.S. App. D.C. 288, 684 F.2d 62, 72 (D.C. Cir. 1982); see generally, Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 282 (7th Cir. 1993).

    c. Moreover, under both the FHA and FEHA, the plaintiff must show that the character of defendant's discriminatory action(s) was not apparent when they were committed but only became so when viewed in light of later acts in order to employ the continuing violation doctrine. Wallace v Chi. Hous. Auth. (2004, ND Ill) 321 F Supp 2d 968; Wittkopf v. County of Los Angeles, 90 Cal. App. 4th 1205, 1220 (Cal. Ct. App. 2001). "Plaintiffs may not utilize the continuing

violation theory to resurrect claims about discrimination concluded in the past, even though its effects persist." McKenzie v. Sawyer, 684 F.2d 62, 72 (D.C. Cir. 1982) [disapproved on other grounds], citing Delaware State College v. Ricks, 449 U.S. 250, 257 (1980); United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977). Further, "[i]f [a person] knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed [her], [she] may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." Moskowitz, supra, 5 F.3d 279, 281. Here, a reasonable person would have, or, in the very least, with the exercise of reasonable diligence should have, known that an alleged demand for sex in exchange for rent, the coverage of a deposit or other housing benefit, was discriminatory in nature at the time it first occurred.

3.  The Fair Housing Council lacks standing to pursue its claims in its own right or any future damages.

    a.  Article III of the United States Constitution requires that all litigated matters involve a case or controversy. As the Supreme Court noted in Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1998), Congress has essentially dispensed with the prudential standing limits in the context of an action under the Fair Housing Act. However, in the wake of Havens, courts have recognized that in order for a fair housing organization, such as the Fair Housing Council, to have standing to sue in its own right under the FHA there must be an "injury in fact." See Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209-210 (1972); Arkansas ACORN Fair Housing, Inc. v. Greystone Development, 160 F.3d 433, 434 (8th

Cir. 1998) (citing Havens, 455 U.S. 363, 372). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1991). In order to satisfy this requirement, the Fair Housing Council must have "devoted significant resources to identify and counteract a defendant's unlawful practices" and allege distinct and palpable injuries that are "fairly traceable" to the defendants' actions. Arkansas ACORN Fair Housing, Inc., supra, 160 F.3d at 434 (citing Havens, 455 U.S. at 379) (emphasis added). "An organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976) (emphasis added). Rather, an organizational plaintiff must prove that instead of spending resources on its ordinary work, it spent resources on other work created by the defendants' discriminatory conduct. Saunders v. General Servs. Corp., 659 F.Supp. 1042, 1059-1061 (E.D. Va. 1987).

4. Under FEHA, the practice of discriminating on the basis of sex in housing accommodations is against public policy. Cal. Gov Code § 12920. Further, while the Fair Housing Act does not explicitly include sexual harassment as a prohibited basis for discrimination, sexual harassment can constitute impermissible housing discrimination under the Act as either creating an offensive environment or conditioning the tenancy or continuation of the tenancy on sexual consideration. See, e.g., Honce v. Vigil, 1 F3d 1085 (10th Cir 1993); New York ex rel. Abrams v. Merlino, 694 F.Supp 1101 (SDNY 1988). However, generally, courts apply an employment discrimination analysis in examining

Fair Housing Act discrimination claims. Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir 1999); Gamble v. City of Escondido, 104 F.3d 300, 304 (9th Cir 1997). Thus, the plaintiff must establish a prima facie case of housing discrimination, and then the burden then shifts to the landlord to articulate a legitimate, nondiscriminatory reason for the challenged action. Harris, supra. If the landlord successfully rebuts the presumption of discrimination, the burden shifts back to the tenant to raise a genuine question as to whether the landlord's purported justification is a pretext for discrimination. Id.

5.  By its terms, Cal. Business & Prof. Code § 17200, et seq. "prohibits as unfair competition 'any unlawful, unfair or fraudulent business act or practice.' Bus. & Prof. Code § 17200. However, whether a particular act is business related "is a question of fact dependent on the circumstances of each case." People v. E.W.A.P., Inc., 106 Cal.App.3d 315, 320-321 (1980). Otherwise, the UCL define unfair competition to include "any 'unlawful…business act or practice'" (Bus. & Prof. Code § 17200, italics added), and by doing so, the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002) (citing Cel-Tech Communications, Inc. 20 Cal. 4th at 180).) In order to prevail on a cause of action for unfair competition under an unlawful business act or practice theory, a plaintiff must show: (1) defendant's conduct occurred while doing business; (2) defendant simply violated any other law while engaging in a business act or practice, and (3) as a result, plaintiff suffered an injury in fact and the loss of money or property.

6.  A landlord owes a tenant a duty of reasonable care in providing and maintaining the rented premises in a safe condition. Civ. Code § 1714(a); Peterson v. Superior Court, 10 Cal.4th 1185, 1189 (1995); Alcaraz v. Vece, 14 Cal.4th 1149, 1156 (1997). This has been

held to mean that a landlord in caring for a property, must act toward the tenant as a reasonable person under all of the circumstances, including: the likelihood of injury; the probable seriousness of the injury; the burden of reducing or avoiding the risk; and the landlord's degree of control over the risk-creating defect. Mora v. Baker Commodities, Inc., 210 Cal.App.3d 771, 779 (1989); Portillo v. Aiassa, 27 Cal.App.4th 1128, 1135 (1994).

7.  The Unruh Act provides that no business establishment of any kind may discriminate against any person in California, or the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because of sex. Civ. Code § 51.5. In order for a landlord to be liable for sexual harassment under such a claim, plaintiffs must prove:

     i.   the business relationship of landlord and tenant;

     ii.  that the landlord made sexual advances, solicitations, sexual requests, demands for sexual compliance by the tenant, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe;

     iii.  the tenant was unable to easily terminate the relationship; and

     iv.  the tenant has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the landlord's conduct. Civ. Code § 51.9 (a).

8.  In every lease there is a covenant of quiet enjoyment that is binding on the landlord during the term of the lease. Civ. Code § 1927. The covenant of quiet enjoyment means

that the tenant must not be wrongfully evicted or disturbed in his or her possession by the landlord. Civ. Code § 1463; Pierce v. Nash, 126 Cal.App.2d 606, 612 (1954). This covenant is breached when the tenant is wrongfully ousted or constructively evicted from the premises. McAlester v. Landers, 70 Cal. 79, 82-83 (1886); Clark v. Spiegel, 22 Cal.App.3d 74, 80 (1971).

9.  The statute of limitations on trespass actions is three (3) years (CCP § 338(b)), and the essence of such a claim is an intentional, unauthorized entry onto the land of another. Civic Western Corp. v. Zila Indus., Inc., 66 Cal.App.3d 1, 16 (1977); Miller & Desatnik Management Co. v. Bullock, 221 CA3d Supp 13, 20 n6 (1990).

10. In order to establish a cause of action for invasion of the state constitutional right of privacy, plaintiffs have the burden of proving the following:

> i.   a legally protected privacy interest;
>
> ii.  a reasonable expectation of privacy under the circumstances; and
>
> iii. conduct by the defendant that amounts to a serious invasion of the protected privacy interest.

Hill v. National Collegiate Athletic Assn. 7 Cal.4th 1, 39-40 (1994).  Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Folgelstrom v. Lamps Plus, Inc., 195 Cal.App.4th 986, 990-992 (2011).

11. To establish a claim under Civil Code Section 51.7, commonly known as the Ralph Civil Rights Act, plaintiffs must prove:

   i. that defendants intentionally threatened violence against plaintiffs, or their property, whether or not defendants actually intended to carry out the threat;

   ii. that a motivating reason for defendants' conduct was the perception of plaintiffs' race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, or disability, etc.;

   iii. that a reasonable person in plaintiffs' position would have believed that the defendant would carry out the threat;

   iv. that a reasonable person in plaintiffs' position would have been intimidated by defendants' conduct;

   v. plaintiffs were harmed; and

   vi. defendants' conduct was a substantial factor in causing said harm.

CACI 3064.

12. Plaintiffs allege that the settlement agreements were obtained by mistake, fraud, duress or undue hardship. However, Section 1691 of the California Civil Code, which governs the rescission of contracts, provides, in pertinent part, that in order to effect a rescission a party to the contract must promptly "Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." Civ. Code § 1691. Further, California case law provides "[t]he settled rule is that one who would rescind for fraud or other reason cannot cling to the portion of the deal which he deems favorable and reject the balance. He must rescind the whole contract or not at all." Hayutin v. Weintraub, 207 Cal. App. 2d 497, 509 (Cal. App. 2d Dist. 1962). Indeed, as

explained in Simmons v. California Institute of Technology, 34 Cal.2d 264, 275 (1949), "The general rule is that one must rescind all of his contract and may not retain rights under it which he deems desirable to have and repudiate the remainder of its provisions." See also, Buena Vista Fruit & Vineyard Co. v. Tuohy, 107 Cal. 243 (1895); Bohall v. Diller, 41 Cal. 532 (1871); Purdy v. Bullard, 41 Cal. 444 (1871); Jones v. Bay Cities Electric Co., 22 Cal.App. 81 (1913). The theory underlying this rule is that it would be unjust enrichment to allow one to retain only the benefits of a transaction, binding the parties to a contract which they did not contemplate. Hayutin, supra.

## VI. Abandoned Issues

### A. Plaintiff

1. Plaintiff Tawana Pickett has abandoned her claims against defendant David Evans.

2. Plaintiffs seek punitive damages under the federal Fair Housing Act only.

3. Plaintiffs intend to try their fair housing claims under the Fair Housing Act (claim 1), FEHA (claim 2), the Unruh Act (claim 3) and the Ralph Act (claim 9), and are contemplating dismissing their remaining claims to streamline trial. In response to defendants' affirmative defense of release, plaintiffs Rene McCants and Tawana Pickett also intend to try their claim for rescission

### B. Defendant

None.

## VII. Witnesses

22

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS STIPULATED TO BY THE PARTIES OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

### A. Plaintiffs' witnesses

1. Lakeitha Anderson

2. Johnny Belt

3. MJ Borelli

4. Michelle Brooks

5. Sondra Brown

6. Betty Jo Cardoza

7. Davinder Chohan

8. Patricia Clark

9. Andrea Clay

10. Linda Collinsworth

11. Mirella Cuevas

12. Custodians of record

13. Michelle Dandridge

14. Tanya Daniels

15. Dawson Diane

16. Diane Edwards

17. Dave Evans

18. Deborah Evans

19. Felecia Fortenberry

20. Jim Friesen

21. Sassan Golafshan

22. Ivy Goosby

23. Michael Grimes

24. Patricia Harris

25. Tanya Harris

26. Cybil Haynie

27. Nicole Hollister

28. Kesone Hongthamaly

29. Patricia Jackson

30. Vivian Jackson

31. Rolando Jefferson

32. Tina Jeffery

33. Laquisha Johnson

34. Ethel Jones

35. Melvin Keyes

36. Sheryl Lawrence

37. Donald Lewis

38. Sheryl Linthicum-Smith

39. Robin Lipton

40. Zaray Lopez

41. Janet Macklin

42. Tanika Maddox

43. Ann Marquart

44. Rene McCants

45. Ruby Oliver

46. Alisa Patrick

47. Sarah Peterson

48. Tawana Pickett

49. Laura Pierce

50. Marianna Pinsler

51. Anthony Plunkett

52. Doug Richardson

53. Noemi Rios

54. Laura Robitschek

55. Maria Rodriguez

56. Yaser Sardar

57. Althea Sears

58. Shamayne Sikora

59. Linda Smith

60. Sherry Smith

61. Carolyn Steel

62. Lisa Trantham

63. Melvin Wapner

64. Patrick Watson

65. Ryan Wheeler

66. Deborah Williams

67. Ovanda Williams

68. Robert Williamson

69. Debbie Woods

70. Brand Wortey

71. Elisa Zamora

72. Jimmy Zapata

**B. Defendants' witnesses**

1.  Myrtle Bell

2.  MJ Borelli

3.  Sondra Brown

4.  John Bruton

5.  Manuel Cruz

6.  Betsayda Cruz

7.  Manuel Cruz

8.  Valentine A. DiCerto

9.  Sherriff Sherry Edmonds

10. Diane Edwards

11. Dave Evans

12. Felicia Fortenberry

13. Cybil Haynie

14. Nicole Hollister

15. Tina Jeffrey

16. Ethel Jones

17. Mary Joyce

18. Sheryl Lawrence

19. Zaray Lopez

20. Rene McCants

21. Scott Nelson

22. Ruby Oliver

23. Alisa Patrick

24. Tawana Pickett

25. Anthony Plunkett

26. Laura Robitschek

27. Veronica Talavera Ramos

28. Timothy L. Rivera

29. Laura Robitschek

30. Linda Smith

31. Lynda Stephenson

32. Melvin Joel Wapner

33. Ovanda Williams

34. Robert Williamson

35. Debbie Woods

36. Any witness identified by plaintiffs

## VIII. Exhibits

The following is a list of documents or other exhibits the parties expect to offer at trial.  NO EXHIBITS OTHER THAN THOSE LISTED IN THIS SECTION MAY BE ADMITTED UNLESS STIPULATED TO BY THE PARTIES OR UPON A SHOWING THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

### A. Plaintiffs' exhibits

1.  Exhibit numbers 1-183 listed in Exhibit 3 to joint pretrial statement (doc. 96-3 as corrected by doc. 100).

### B. Defendants' exhibits

1.  Exhibit numbers 1-183 listed in Exhibit 3 to joint pretrial statement (doc. 96-3).

## IX. Discovery Documents to be Used at Trial

At least seven days before trial, the parties will file a joint statement listing all portions of depositions, answers to interrogatories, and responses to requests for admission that any party expects it may offer at trial. That joint statement will include objections interposed by any party to the admissibility of the designated discovery documents.

## X. Further Discovery or Motions

None, except for motions in limine in accordance with the schedule set by the Court.

## XI. Stipulations

The parties stipulate to the appearance and testimony of two out-of-state witnesses, Linda Collinsworth and Carolyn Steel, via contemporaneous, remote transmission pursuant to Rule 43(a). The parties stipulate that there is no need to call as witnesses custodians of records where a custodian has submitted a certificate pursuant to Fed. R. Evid. 902(11). Plaintiff Sheryl Linthicum Smith stipulates to limit her claim for emotional distress damages to garden-variety emotional distress, as set forth in Exhibit 4 to the joint pretrial statement (doc. 96-4).

## XII. Amendments/Dismissals

Plaintiffs do not anticipate moving to amend the pleadings. Plaintiffs intend to try their fair housing claims under the Fair Housing Act (claim 1), FEHA (claim 2), the Unruh Act (claim 3) and the Ralph Act (claim 9), and are contemplating dismissing their remaining claims to streamline trial. In response to defendants' affirmative defense of release, plaintiffs Rene McCants and Tawana Pickett also intend to try their claim for rescission (claim 10). Defendants do not anticipate any amendments to the pleadings, dismissals, additions or substitution of parties.

## XIII. Settlement Negotiations

The parties have attended two settlement conferences before Magistrate Judge Austin, on May 30 and July 24, 2013. Defendants do not believe that further settlement negotiations or conferences would be helpful at this time.

## XIV. Agreed Statement

The parties do not believe that a presentation of all or part of the action upon an agreed statement of fact is feasible or advisable.

## XV. Separate Trial of Issues

Plaintiffs do not believe it would be economical to try any particular issue separately in this action.   Defendants believe it is feasible and advisable, and hereby respectfully request, to undertake a separate trial on the enforceability and effect of the settlement agreements entered into by plaintiffs Rene McCants and Tawana Pickett with defendants, and each of them, June 8 and 10, 2012, in advance of other issues in the case.   The parties have agreed to brief, in accordance with the motion in limine briefing schedule, the issue of whether the Court should phase the trial pursuant to defendants' request.

## XVI. Impartial Experts – Limitation of Experts

Plaintiffs have designated one expert, Dr. Linda Collinsworth, who will provide scientific and technical information testifying about what is known from social science research concerning (a) the typical reactions and responses of sexual harassment victims, and (b) the unique vulnerabilities of women in housing, particularly subsidized housing. There is no need for appointment of impartial expert witnesses.

## XVII. Attorneys' Fees

Plaintiffs seek an award of attorneys' fees and costs pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c), FEHA, Cal. Govt. Code § 12989.2, and the Unruh Act, Cal. Civ. Code § 52.

Defendants seek the recovery of reasonable attorneys' fees incurred for the enforcement of the settlement agreements entered into with plaintiffs Rene McCants and Tawana Pickett.

## XVIII. Trial Exhibits

The parties are not aware of any need for the special handling of exhibits. The parties request that they be allowed to lodge their exhibit on disc in PDF for use by the Court.

## XIX. Trial Protective Order

The parties agree that a trial protective order should be issued regarding financial information and sexually explicit materials. Seven days before trial, the parties will file a joint application and stipulation identifying by number the exhibits that should be subject to a trial protective order.

## XX. Further Trial Preparation

### A. Final Witness List

The parties are ordered to file and serve their final list of witnesses by Thursday, October 3, 2013. Additionally, at that time plaintiffs shall disclose the order of witnesses so that defendants will be prepared for cross-examination.  Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in Section VII of this order.

### B. Trial Briefs

The parties may file and serve trial briefs by Tuesday, September 10, 2013.  Local Rule 285 (Fed. R. Civ. P. 16).  The parties need not include in a trial brief any issue that is adequately

addressed in a motion in limine or in an opposition to a motion in limine.  If trial briefs are filed,
the parties may file responding briefs by Tuesday, September 24, 2013.

**C. Duty of Counsel to Pre-Mark Exhibits**

The parties are ordered to meet and confer at their earliest convenience for the purposes of pre-
marking and examining each other's exhibits.   All joint exhibits must be pre-marked with
numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of plaintiffs' exhibits shall be
pre-marked with numbers.  All of defendants' exhibits shall be pre-marked with letters.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

    a.  Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff by
        Thursday, October 3, 2013, one for use by the Courtroom Clerk and the other for
        the Court; and

    b.  One set for each counsel's own use.

    If the parties desire, they may have a fifth set of binders to be used for the purposes of
    questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each
    proposed exhibit to be introduced into evidence, and to prepare separate indices - one
    listing joint exhibits, and one listing each party's separate exhibits:

    a.  Duplicate exhibits, i.e., documents which both sides desire to introduce into
        evidence, shall be marked as a joint exhibit, and numbered as directed above.
        Joint exhibits shall be listed on a separate index, and shall be admitted into
        evidence on the motion of any party, without further foundation.

    b.  As to exhibits that are not jointly offered, and to which there is no objection to
        introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs'

Exhibit 1 or Defendants' Exhibit A, and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

c.   Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

d.   Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.   Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

### INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED INTO EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|-----------|-------------|------------------------|----------------------|-----------------|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.  The Court has no objection to counsel using copies.  However, the copies must be legible.  If any document offered into evidence is partially illegible, the Court may exclude it from evidence *sua sponte*.

**D. Discovery Documents**

33

By Thursday, October 3, 2013, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by Thursday, October 3, 2013.

### E. Motions in Limine Hearing and Briefing Schedule

The hearing for motions in limine will be held on Tuesday, October 1, 2013 at 9:00 a.m.  In addition to addressing any filed motions in limine, at that time the Court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.  Counsel are expected to be fully cognizant of the legal issues involved in the case by the date of the hearing.

By 4:00 p.m. on Tuesday, September 10, 2013, all motions in limine, with supporting points and authorities, shall be filed and served either personally or by facsimile upon opposing counsel.  By 4:00 p.m. on Tuesday, September 24, 2013, opposition to any motion in limine shall be filed and served either personally or by facsimile upon opposing counsel.  If a party does not oppose a motion in limine, that party shall file and serve in the same manner a statement of non-opposition to that motion in limine.  The parties have agreed to dispense with replies.

### F. Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the Court each morning to advise the Court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The Court will rule on those documents, to the extent possible, prior to the commencement of trial each day.  If the ruling depends upon the receipt of testimony, the Court will rule as requested upon the receipt of such testimony.   The Court shall consider any other legal matter at morning

conferences as well.  The Court does not wish to recess the trial to hear legal argument, and proper preparation by counsel will eliminate the need for that result.

### G. Use of Videotapes and Computer

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by 4:00 p.m. on Thursday, October 3, 2013.  If a written transcript of audible words on the tape is available, the Court requests that the transcript be lodged with the Court, solely for the aid of the Court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom and meet with a representative of the Information and Technology Department to receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use Microsoft PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

### H. Order of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call twenty-four (24) hours prior to calling that witness.

### I. Proposed Jury Instructions

N/A.

### J. Voir Dire

N/A.

### K. Agreed Summary of the Case

N/A.

### XXI. Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 283 (Fed. R. Civ. P. 16). Such objections shall specify the requested corrections, additions or deletions.

### XXII. Rules of Conduct During Trial

**A.  General Rules**

All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.   All oral presentations shall be made from the podium, unless otherwise permitted by the Court.

**B. Jury Selection**

N/A.

**C. Opening Statements**

Opening statements shall be made to the Court.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

**D. Case in Chief**

Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the Court.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E. Witnesses**

Before approaching a witness, counsel shall secure leave of court to approach the witness. Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F. Exhibits**

All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.  The Court usually will conduct an on-the-record review of the exhibits that have been admitted into evidence, at the conclusion of each party's case-in-chief and after each party has rested its entire case.

**G. Objections**

Counsel shall state the specific legal ground(s) for the objection, and the Court will rule based upon the ground(s) stated.  The Court will permit counsel to argue the matter at the next recess. The Court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

**H. Closing Argument**

Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

Dated:   September 3, 2013

SENIOR  DISTRICT  JUDGE